

FILED
IN OPEN COURT

OCT 2 0 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 1:16-CR-239-AJT |
| | ) |
| v. | ) Count 1: 18 U.S.C. § 1349 |
| | ) (Conspiracy to Commit Wire Fraud) |
| | ) |
| TERRY WAYNE MILLENDER, | ) Counts 2-10: 18 U.S.C. § 1343 |
| (Counts 1-18) | ) (Wire Fraud) |
| | ) |
| | ) Count 11: 18 U.S.C. § 1956(h) |
| BRENDA MILLENDER, | ) (Money Laundering Conspiracy) |
| (Counts 1-11) | ) |
| | ) Counts 12-14: 18 U.S.C. § 1956 |
| | ) (Money Laundering) |
| and | ) |
| | ) Counts 15-16: 26 U.S.C. § 7206(1) |
| | ) (Filing a False Tax Return) |
| GRENETTA WELLS, | ) |
| a/k/a Grenetta Bartee, | ) Count 17: 26 U.S.C. § 7206(2) |
| (Counts 1-11, 19) | ) (Aiding and Assisting in the Preparation of a |
| | ) False Tax Return) |
| | ) |
| Defendants. | ) Counts 18-19: 18 U.S.C. § 1512(c)(2) |
| | ) (Obstruction of an Official Proceeding) |
| | ) |
| | ) Forfeiture Notice |
| | ) |
| | ) |

## INDICTMENT

October 2016 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

## INTRODUCTORY ALLEGATIONS

### I.    Persons, Entities and Terms

1.     Micro-Enterprise Management Group ("MEMG") was a Virginia company created in June 2008, before the financial crisis, with an office in Arlington, Virginia.  MEMG purported to help the poor in developing countries by providing small, short-term loans to individuals who wished to start or expand existing businesses by working with a network of established micro-finance institutions.

2.     Defendant TERRY WAYNE MILLENDER ("TERRY" or "Pastor TERRY") was a Senior Pastor of the Victorious Life Church located in Alexandria, Virginia.  TERRY was a founding member and the Chief Executive Officer ("CEO") of MEMG.  Prior to founding MEMG, TERRY had been involved in several prior attempts to make money from foreign exchange trading, including by personally investing and recruiting others to invest. One of these past investments was a Ponzi scheme known as the Three Hebrew Boys which, as TERRY knew, led to the organizers being convicted and sentenced to prison for fraud.

3.     Defendant BRENDA MILLENDER ("BRENDA") was the wife of TERRY and a member of the Victorious Life Church.  BRENDA was a founding member and the registered agent for MEMG.  BRENDA assisted with the operations of MEMG and received commission payments from MEMG.

4.     Defendant GRENETTA WELLS ("GRENETTA") was a member of the Victorious Life Church.  GRENETTA was the Chief Operating Officer ("COO") and International Project Director of MEMG. GRENETTA had access to the funds in the MEMG accounts and monitored transfers of investor funds.  She was also responsible for maintaining MEMG's books and records.  At the time she became COO of MEMG, GRENETTA was on supervised release, after being sentenced in the U.S. District Court for the Eastern District of

2

Virginia to prison for money laundering conspiracy, for her role in defrauding investors in a $1 million dollar Ponzi scheme.

5.     Golden Strategies ("GS") was a Delaware company formed in February 2009. GRENETTA was the owner and President of GS. GRENETTA opened trading accounts with Pension Financial Services to buy and sell stock options using MEMG investor money. One account was opened in February 2009, in the name of Golden Strategies ("GS Cobra account"); the other account was in her name ("GRENETTA Cobra account").

6.     The Foreign exchange market ("Forex" or "FX") was a global exchange in which investors sought to capitalize on fluctuations in currency exchange rates. Currency trading was highly speculative and typically involved the use of options.

7.     OANDA was a financial services company that offered a Forex trading platform. Clients who opened an account with OANDA could use it to engage in currency trading.

8.     Exchange Access International ("EAI") was a foreign company created in August 2008, under the laws of the island of Nevis, which is located in the Caribbean. J.C., an associate of TERRY and resident of the British Virgin Islands, was listed as the owner of EAI. EAI was created to enable MEMG to conduct Forex trading using MEMG investor money. This Forex trading was done using an OANDA account in EAI's name.

9.     R.A. was a national of Jamaica and website programmer who lived in Florida. In or about September 2008, R.A. met TERRY and GRENETTA in Jamaica, where R.A. agreed to act as EAI's "trader" and engage in Forex trading on behalf of EAI, using funds provided by MEMG. Representatives of MEMG, including GRENETTA, oversaw and controlled the transfers of funds into EAI and the OANDA account used by R.A.

10.     The Internal Revenue Service ("IRS") was an agency of the U.S. Department of the Treasury, a department of the United States within the meaning of Title 18, United States Code, Section 6. The IRS had responsibility for the ascertainment, computation, assessment, and collection of taxes, including income taxes. IRS-Criminal Investigation ("IRS-CI") was part of IRS and was responsible for investigating potential tax and tax-related crimes.

11.     The United States Postal Service was an agency of the United States within the meaning of Title 18, United States Code, Section 6. The U.S. Postal Inspection Service ("USPIS") was part of the U.S. Postal Service and was responsible for, among other things, enforcing laws that defend the nation's mail system, including mail fraud and related crimes.

12.     The U.S. Department of Justice was an agency or department of the United States within the meaning of Title 18, United States Code, Section 6.

13.     Self-directed Individual Retirement Accounts ("IRAs") were like traditional IRAs, except they allowed the owner to choose how the money was invested and select from a wider variety of options, such as real property, promissory notes, and private companies.

14.     Equity Trust was a financial services company located in Ohio that offered self-directed IRAs. As the account custodian, Equity Trust did not offer financial advice or otherwise vet investments selected by accountholders for self-directed IRAs.

15.     Microfinance institutions ("MFIs") were organizations that focused on serving developing countries by making loans to individuals and small business who lacked access to traditional banking and related financial services, generally due to poverty.

## II.     MEMG Operations

16.     MEMG marketed itself as a Christian, philanthropic organization that was looking for investors (which it called "lenders") to provide financing, in the form of loans. Prospective

4

investors were generally told that MEMG would give investor loan proceeds to MFIs, and that MEMG (and its investors) would earn profits from the interest paid by the micro-entrepreneurs who were borrowing from the MFIs.

17.     Prospective investors were falsely told that: investing in MEMG was safer than other investments, particularly after the 2008 financial crisis; would yield a better rate of return; the principal of any loan was safe; a fixed interest rate was guaranteed; the loan principal and interest was secured by the assets of MEMG; investors could request and receive any accumulated interest without penalty after the initial 90-day period; and investors' money would help improve the lives of others in developing countries.

18.     Investors were not told that: MEMG intended and did attempt to generate the promised rates of return exclusively through Forex and, later, options trading; MEMG was using investor money to pay the personal expenses of the members and employees of MEMG; MEMG intended and did use the principal of investors' loans for trading; MEMG had no assets besides money acquired from investors; and any money repaid to investors was actually from the loan principals of other investors.

19.     Investors were required to sign loan agreements. GRENETTA or other members of MEMG would then help investors transfer their funds to MEMG. In 2009, GRENETTA and other representatives of MEMG began promoting Equity Trust's self-directed IRAs as a way for investors to liquidate a traditional IRA or retirements account, and then loan money to MEMG through the self-directed IRA. Neither Equity Trust nor the self-directed IRA safeguarded the investor's funds or provided any real-time information about how MEMG was using or disposing of the money.

20.     After investor funds were received by MEMG, they were used for purposes not disclosed to or approved by investors, including: to engage in Forex and options trading through shell companies EAI and Golden Strategies; to pay commissions, salary and fees to members and representatives of MEMG; and to pay personal expenses incurred by members and representatives of MEMG. After the funds had been spent, members and representatives of MEMG attempted to conceal that investors money had been lost, such as by encouraging investors to roll over their loans, modify their loan terms, or defer the receipt of payments on their loans.

### III.     Financial Accounts and Assets

21.     MEMG had a bank account at BB&T ("MEMG BB&T account") that was opened in June 2008. TERRY and BRENDA were signatories on this account. In September 2009, an account ending in 2921 was opened at Wachovia, which later became Wells Fargo ("MEMG WF account"). TERRY was a signatory on this account.

22.     In September 2008, J.C. opened a bank account at Belize Bank in the name of EAI ("EAI Belize account"). Members of MEMG, including GRENETTA, caused the wiring of funds from MEMG's accounts in the United States to EAI's Belize account.

23.     TERRY had a personal bank account at BB&T ("TERRY BB&T account"). TERRY was the sole signatory on that account.

24.     GRENETTA had two bank accounts at BB&T. The first was opened in August 2008 ("GRENETTA BB&T account x1774"), the second was opened in March 2009 ("GRENETTA BB&T account x5541").

25.     GRENETTA opened a bank account at BB&T for Golden Strategies, which used MEMG's office in Arlington, Virginia as its mailing address ("GS BB&T account").

6

26.     In January 2008, TERRY entered into a sales contract to purchase the real property located at 5251 Monroe Drive in Springfield, Virginia ("Monroe Drive") on a payment plan, which required payments of over $10,000 a month.  Monroe Drive was an over 6,000 square foot, single family home with 6 bedrooms and 6.5 bathrooms.  In November 2008, TERRY, BRENDA and their family members moved into the house, where they continued to live and attempt to make payments towards the $1.75 million dollar purchase price until they were evicted in September 2010.

27.     The allegations in paragraphs 1 through 26 are realleged in each Count of this Indictment as if set forth fully therein.

## COUNT 1
### (Conspiracy to Commit Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

### I.  The Conspiracy

28.     From a date unknown, but by at least June 2009 through at least 2015, within the

Eastern District of Virginia and elsewhere, the defendants TERRY WAYNE MILLENDER,

BRENDA MILLENDER, and GRENETTA WELLS unlawfully and knowingly did combine,

conspire, and agree with others known and unknown to the grand jury, to commit the following

offense against the United States, namely, wire fraud, that is, having devised or intending to

devise any scheme or artifice to defraud, or for obtaining money or property by means of false or

fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means

of wire, radio, or television communication in interstate or foreign commerce, any writings,

signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in

violation of Title 18, United States Code, Section 1343.

### II.  The Purpose of the Conspiracy

29.     It was a purpose of the conspiracy to defraud investors and to enrich the

conspirators by obtaining custody and control of the investor's money and property through

false, fraudulent, and misleading representations as well as material omissions.

30.     It was further a purpose of the conspiracy to conceal and disguise the true use and

disposition of the investors' money and property, in part through false, fraudulent, and

misleading representations as well as material omissions.

### III.  Manner and Means of the Conspiracy

31.     The ways, manner, and means by which the conspirators sought to accomplish the

conspiracy included, but were not limited to, the following:

A. Recruiting prospective investors by promoting the philanthropic purpose, rate of return, security of the investment, ability to receive payments before maturation of the loan, and Christian focus of MEMG.

B. Making false, fraudulent and misleading representations and material omissions about: MEMG and its role in micro-lending; how investor's money would be used; the safeguarding of the loan principal; the risks; the methods that would be used to attempt to generate profits and returns; the true financial condition of MEMG and its members; the qualifications of MEMG's members and representatives; and what expenses/fees would be paid by MEMG using investor money or profits.

C. Concealing the history, qualifications, and financial circumstances of members and representatives of MEMG, including GRENETTA's role in a past investment fraud scheme, TERRY's unpaid tax liens with the IRS, and TERRY and BRENDA's financial troubles that culminated in them filing for bankruptcy in September 2010.

D. Using loan proceeds for different purposes than what was disclosed to investors, such as stock options trading, personal expenses, salaries and commissions.

E. Concealing and misrepresenting the true financial condition of MEMG from existing and prospective investors, both initially and as its condition changed.

F. Concealing and misrepresenting the true disposition of investor money and the unauthorized use of loan proceeds, by making false and misleading statements and encouraging investors to extend or roll over their loans.

G. Lulling and attempting to lull investors with updates, small payments, false excuses for delays, and promises of future payment.

## IV.    Overt Acts

32.    In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by members of the conspiracy in the Eastern District of Virginia and elsewhere:

A. On or about August 5, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused W.W. to transfer $40,000 of her money to MEMG's BB&T account.

B. On or about August 6, 2008, TERRY and others known and unknown to the Grand Jury caused a payment of $14,417.80 towards the purchase of TERRY and BRENDA's personal residence from M.J.

C. On or about August 7, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused a $5,000 check to GRENETTA to be drawn on MEMG's BB&T account.

D. On or about August 13, 2008, BRENDA wrote herself a check for $1,000 from MEMG BB&T account and endorsed it.

E. On or about August 19, 2008, TERRY and others known and unknown to the Grand Jury caused a $2,000 check to be written to the Victorious Life Church.

F. On or about September 7, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused a check from S.R. to MEMG for $40,000 to be deposited into MEMG's BB&T account.

G. On or about September 18, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused D.S. to transfer $40,000 to MEMG's BB&T account.

H. On or about October 8, 2008, BRENDA endorsed a $1,500 check from MEMG's BB&T account, with a memo including "salary – consulting."

I. On or about November 5, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused L.F. to wire $50,000 to MEMG's BB&T account.

J. On or about November 28, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused R.W. to wire $50,000 to MEMG's BB&T account.

K. On or about December 4, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused J.S. to wire $12,000 to MEMG's BB&T account.

L. On or about December 18, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused R.P. to wire $15,000 to MEMG's BB&T account.

M. On or about December 19, 2008, TERRY, GRENETTA and others known and unknown to the Grand Jury caused GRENETTA to receive a check for $3,500 drawn on MEMG's BB&T account.

N. On or about December 19, 2008, TERRY and others known and unknown to the Grand Jury caused a $3,605.15 payment to be made to McLean Furniture from MEMG's BB&T account.

O. Between on or about February 4, 2009 and March 19, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused F.S. to wire a total of $400,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

P. On or about February 4, 2009, TERRY and others known and unknown to the Grand Jury caused a $10,600 payment to M.J. towards the purchase of TERRY's and BRENDA's home.

Q. On or about February 13, 2009, GRENETTA caused a $2,132.45 payment for home furnishings to be made from MEMG's BB&T account.

R. On or about February 19, 2009, TERRY, GRENETTA, and others known and unknown to the Grand Jury caused R.S-M. to wire $45,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

S. Between February 20, 2009 and March 9, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused M.D. to wire a total of $84,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

T. On or about February 22, 2009, TERRY and others known and unknown to the Grand Jury caused a $1,500 payment to be made to Victorious Life Church.

U. On or about February 26, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused S.B. to wire $34,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

V. On or about March 3, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused R.M. to wire $25,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

W. On or about April 30, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused H.J. to wire $120,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

X. Between July 27, 2009 and November 17, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused R.G.S. to wire a total of $45,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

Y. On or about August 10, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused D.A. to wire a total of $122,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

Z. Between October 23, 2009 and January 4, 2010, TERRY, GRENETTA and others known and unknown to the Grand Jury caused L.J. to wire a total of $54,000 to a self-directed IRA with Equity Trust, which was later wired to MEMG's BB&T account.

AA.    On or about November 23, 2009, TERRY, GRENETTA and others known and unknown to the Grand Jury caused R.W. to wire $100,000 to MEMG's BB&T account.

BB.    On or about January 14, 2011, TERRY, GRENETTA and others known and unknown to the Grand Jury caused D.W. to wire $25,000 to MEMG's WF account.

## *MEMG funds to EAI*

A. On or about February 11, 2009, TERRY and others known and unknown to the Grand Jury caused a wire $6,000 from MEMG's BB&T account to EAI's Belize account.

B. On or about February 18, 2009, TERRY and others known and unknown to the Grand Jury caused a wire of $3,000 from EAI's Belize account to EAI's OANDA account.

C. On or about February 27, 2009, TERRY and others known and unknown to the Grand Jury caused a wire of $99,990 from MEMG's BB&T account to EAI's Belize account.

D. On or about March 3, 2009, TERRY and others known and unknown to the Grand Jury caused a wire of $100,000 from EAI's Belize account to EAI's OANDA account.

E. On or about March 31, 2009, TERRY and others known and unknown to the Grand Jury caused a wire of $74,990 from MEMG's BB&T account to EAI's Belize account.

F. On or about April 3, 2009, TERRY and others known and unknown to the Grand Jury caused a wire of $75,000 from EAI's Belize account to EAI's OANDA account.

*Payments to members and representatives of MEMG*

A. On or about February 9, 2009, GRENETTA received a $600 check drawn on the MEMG BB&T account, with the memo "bonus."

B. Between February 20, 2009 and March 26, 2009, GRENETTA and others known and unknown to the Grand Jury caused a total of $99,000 to be transferred from MEMG's BB&T account to GS BB&T account.

C. On or about February 24, 2009, GRENETTA caused $30,000 to be wired from GS BB&T account to Golden Strategies' trading account.

D. On or about March 27, 2009, BRENDA endorsed and cashed a $1,500 check drawn on the MEMG BB&T account, with memo "consulting fee."

E. On or about May 7, 2009, BRENDA endorsed and cashed a $1,200 check drawn on the MEMG BB&T account, with memo "Mgt Fee."

F. On or about December 2, 2009, BRENDA endorsed and cashed a $500 check drawn on the MEMG BB&T account, with memo "Mgt fees."

G. On or about August 3, 2009, GRENETTA deposited $7,500 cash into the Golden Strategies BB&T account.

H. On or about January 12, 2010, BRENDA endorsed and cashed a $550 check drawn on the MEMG BB&T account, with memo "consulting fees."

### MEMG Communications

I. On or about August 20, 2010, GRENETTA sent TERRY, B.P. and T.A. an email offering to help change D.A.'s loan with MEMG after D.A.'s death.

J. On or about March 17, 2011, GRENETTA sent H.P. an email regarding the schedule of MEMG payments on his loan.

K. On or about June 30, 2011, GRENETTA called Equity Trust to update D.A.'s account.

L. On or about November 8, 2011, TERRY sent W.W. a letter requesting a temporary modification to their loan agreements because of "market conditions globally" and the acquisition of our primary "MFI [microfinance institution]."

M. On or about October 26, 2012, TERRY sent an email to D.S. stating repayment was delayed due to issues with the IRS.

N. On or about February 21, 2012, TERRY and others known and unknown to the Grand Jury caused a letter to be sent to S.R. about modifying S.R.'s MEMG loan agreement.

O. On or about March 13, 2012, TERRY told R.P. that market fluctuations required a 9-month "reprieve" for all MEMG loans.

P. On or about June 15, 2012, GRENETTA responded to M.D.'s request for the return of some of M.D.'s money.

Q. On or about July 11, 2012, TERRY sent an email to M.D. stating that the loan and interest would be paid in September.

R. On or about 2012, BRENDA paid D.S. approximately $2,000 in cash at the Victorious Life Church, as partial repayment of D.S.'s loan to MEMG.

S. On or about July 6, 2013, MILLENDER and L.J. signed modification forms for L.J.'s loans to MEMG.

T. On or about September 26, 2012, MILLENDER sent an email to MEMG investors titled "Update for ALL MEMG Participants."

U. On or about June 26, 2013, TERRY and others known and unknown to the Grand Jury caused a $50 check written on MEMG's WF account to be sent to Equity Trust to pay a charge on an Equity Trust account for investor L.J.

V. On or about July 17, 2013, TERRY called Equity Trust to pay a Not Sufficient Fund ("NSF") fee owed on L.J.'s Equity Trust account.

W. On or about December 31, 2013, TERRY caused an email to be sent to MEMG investors titled "Official Communication."

   (All in violation of Title 18, United States Code, Section 1349.)

## COUNTS 2-10
### (Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

**I.      The Scheme**

33.      From a date unknown to the Grand Jury but by at least June 2008 through at least 2015, in the Eastern District of Virginia and elsewhere, the defendants TERRY WAYNE MILLENDER, BRENDA MILLENDER, and GRENETTA WELLS, having knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations and material omissions, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals and sounds, for the purpose of executing such scheme and artifice to defraud.

**II.      Manner and Means**

34.      The scheme and artifice to defraud are more fully described in paragraphs 31 and 32 of this Indictment, which is realleged and incorporated as if fully set forth herein.

**III.      Wire Communications in Furtherance**

35.      On or about the dates shown below, in the Eastern District of Virginia and elsewhere, the defendants TERRY WAYNE MILLENDER, BRENDA MILLENDER, and GRENETTA WELLS, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, transmitted and caused to be transmitted by means of wire communications in interstate commerce writings, signs, signals and sounds as described for each count below:

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 2 | 11/4/2011 | Email from TERRY to D.S. regarding access to the MEMG website and loan agreement |
| 3 | 3/2/2012 | Email from GRENETTA to TERRY, R.P., and H.P. responding to a question about a MEMG contract. |

17

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 4 | 6/15/2012 | Email from GRENETTA to TERRY and M.D. about MEMG's disbursement of funds after loan maturation. |
| 5 | 9/26/2012 | Email from TERRY to MEMG investors with "critical update" attached discussing the investigation of MEMG by the Virginia State Corporation Commission. |
| 6 | 12/31/2013 | Email from TERRY to MEMG investors about MEMG's status and loan payout dates. |
| 7 | 3/25/2013 | Email from TERRY responding to H.J.'s request return of her $120,000 loan to MEMG. |
| 8 | 11/21/2013 | Text message from TERRY to T.A. regarding MEMG loan |
| 9 | 1/28/2014 | Email from TERRY to MEMG investors about a repayment plan and timeline. |
| 10 | 3/31/2015 | Email from TERRY to MEMG investors with "Official month end update" that discusses meeting Postal Inspector Campbell. |

(All in violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT 11
### (Money Laundering Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

### I. The Conspiracy

36.     From a date unknown, but by at least in or about June 2008 and continuing through at least in or about 2015, in the Eastern District of Virginia and elsewhere, the defendants TERRY WAYNE MILLENDER, BRENDA MILLENDER, and GRENETTA WELLS did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

A. to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is wire fraud and conspiracy to commit wire fraud, with the intent to promote the carrying on of specified unlawful activity, that is wire fraud and conspiracy to commit wire fraud, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

B. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such

financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

C. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

D. to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1957.

## II.    Manner and Means

37.    The ways, manner, and means by which the conspirators sought to accomplish the conspiracy and its objectives included, but were not limited to, the following:

A. Paying fraudulently obtained loan proceeds to representatives of MEMG who successfully recruited new investors.

B. Transferring and causing the transfer of fraudulently obtained loan proceeds to and through different shell entities owned or controlled by the conspirators or their associates, such as EAI and Golden Strategies.

C. Transferring and causing the transfer of fraudulently obtained loan proceeds between bank accounts in the United States and financial accounts outside the United States.

D. Using fraudulently obtained loan proceeds to pay conspirators and their personal expenses.

E. Intentionally mischaracterizing the nature and purpose of payments made for the benefit of conspirators.

F. Dealing in cash, such as by withdrawing fraudulently obtained loan proceeds from MEMG accounts.

G. Commingling fraudulently obtained loan proceeds with money from other sources, such as in the bank accounts for Victorious Life Church.

H. Using fraudulently obtained loan proceeds to engage in monetary transactions greater than $10,000.

(All in violation of Title 18, United States Code, Section 1956(h).)

## COUNT 12
### (Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

38.     On or about November 29, 2011, in the Eastern District of Virginia and elsewhere, defendant TERRY WAYNE MILLENDER did transport, transmit, transfer and attempt to transport, transmit and transfer funds, that is $1,555 from an account in the name of EAI, located at a place outside the United States, to a place inside the United States, that is MEMG's WF account, with the intent to promote the carrying on of specified unlawful activity, that is wire fraud and conspiracy to commit wire fraud.

(All in violation of Title 18, United States Code, Section 1956(a)(2)(A) and 2.)

## COUNTS 13-14
### (Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

39.    On or about the dates shown in the table below, in the Eastern District of Virginia and elsewhere, defendant TERRY WAYNE MILLENDER did knowingly conduct and attempt to conduct the following financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is wire fraud and conspiracy to commit wire fraud, knowing that the transactions were designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Description of Financial Transaction |
|-------|------|--------------------------------------|
| 13 | 12/5/2011 | Withdrawal of $100 cash from MEMG WF account |
| 14 | 12/6/2011 | Withdrawal of $100 cash from MEMG WF account |

(All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.)

## COUNT 15
### (Filing a False Tax Return)

THE GRAND JURY FURTHER CHARGES THAT:

40.     On or about November 3, 2010, in the Eastern District of Virginia and elsewhere, the defendant TERRY WAYNE MILLENDER, a resident of Alexandria, Virginia, did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2008 which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. This Individual Income Tax Return, which was prepared and signed in the Eastern District of Virginia, and was filed with the IRS, stated that the defendant's total income was $32,914 and his Schedule E income was -$18,018, when as he then and there knew, he had received additional income not reported on his return.

(All in violation of Title 26, United States Code, Section 7206(1).)

## COUNT 16
### (Filing a False Tax Return)

THE GRAND JURY FURTHER CHARGES THAT:

41.     On or about October 22, 2010, in the Eastern District of Virginia and elsewhere, the defendant TERRY WAYNE MILLENDER, a resident of Alexandria, Virginia, did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2009 which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. This Individual Income Tax Return, which was prepared and signed in the Eastern District of Virginia, and was filed with the IRS, stated that the defendant's total income was -$191,727 and his Schedule E income was -$258,327, when as he then and there knew, he had received additional income not reported on his return.

(All in violation of Title 26, United States Code, Section 7206(1).)

## COUNT 17
### (Aiding and Assisting in the Preparation of a False Tax Return)

THE GRAND JURY FURTHER CHARGES THAT:

42.     On or about November 21, 2011, in the Eastern District of Virginia and elsewhere, defendant TERRY WAYNE MILLENDER, a resident of Alexandria, Virginia, did willfully aid and assist in, and procure the preparation and presentation to the IRS, of a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2010.  The return was false and fraudulent as to a material matter, in that the return represented that the defendant's total income was $52,315 and had no Schedule E income, whereas as the defendant then and there knew, he had received additional income not reported on his return.

(All in violation of Title 26, United States Code, Section 7206(2).)

## COUNT 18
### (Obstruction of an Official Proceeding)

THE GRAND JURY FURTHER CHARGES THAT:

43.     On or about March 2013, TERRY was interviewed by employees of the Virginia

State Corporation Commission ("VA SCC"), which was investigating MEMG. During the

interview, the employees identified themselves and explained the purpose of the interview.

44.     On or about July 1, 2013, TERRY was interviewed at his home in the Eastern

District of Virginia by Postal Inspectors from USPIS, who identified themselves as federal law

enforcement agents during the interview.

45.     On or about March 8, 2015, TERRY was interviewed by a Postal Inspector from

USPIS and a Special Agent with IRS-CI. During the interview, the agents identified themselves

as federal law enforcement agents and advised TERRY of his rights.

46.     From a date unknown to the Grand Jury but by at least March 2013 and

continuing through at least 2015, in the Eastern District of Virginia and elsewhere, defendant

TERRY WAYNE MILLENDER corruptly obstructed, influenced, impeded and attempted to

obstruct, influence and impede an official proceeding, to wit, a federal grand jury investigation,

in violation of Title 18, United States Code, Section 1512(c)(2).

47.     The manner and means by which the defendant attempted, through a continuing

course of conduct, to obstruct the official proceeding included, among other things, the

following:

  A. TERRY made materially false and misleading statements, as well as material

     omissions, that sought to conceal the true nature, form and amount of compensation

     that he and his family members, including BRENDA, received from MEMG; the

existence of a conspiracy and scheme to defraud; and the reason and circumstances under which investors' money was lost.

48.    TERRY falsely affirmed that checks to M.J. were for the office or headquarters for MEMG, which is what was often written in the memo line of the checks.

49.    TERRY falsely stated that MEMG failed and investors lost their loans due to the global financial crisis in 2008.

50.    The statements and representations were false because as TERRY WAYNE MILLENDER then and there knew:

A. The payments to M.J. were for the purchase of TERRY and BRENDA's personal residence at the time and were not legitimate business expenses. At that time, MEMG's office was in Arlington, Virginia.

B. Investors' loans were not lost due to the global financial crisis, but rather because they were spent by TERRY and his conspirators.

(All in violation of Title 18, United States Code, Sections 1512(c)(2).)

## COUNT 19
### (Obstruction of an Official Proceeding)

51.     The allegations in paragraphs 43 through 50 are realleged and incorporated as if set forth fully therein.

52.     On or about October 25, 2013, GRENETTA was interviewed by Postal Inspectors from USPIS, who identified themselves as federal law enforcement agents during the interview.

53.     On or about December 11, 2014, GRENETTA was interviewed by a Postal Inspector from USPIS and a Special Agent with IRS-CI. During the interview, the agents identified themselves as federal law enforcement agents and advised GRENETTA of her rights.

54.     From a date unknown to the Grand Jury but by at least on or about October 2013 and continuing through at least 2015, in the Eastern District of Virginia and elsewhere, defendant GRENETTA WELLS corruptly obstructed, influenced, and impeded and attempted to obstruct, influence and impede an official proceeding, to wit, a federal grand jury investigation, in violation of Title 18, United States Code, Section 1512(c)(2).

55.     The manner and means by which the defendant attempted, through a continuing course of conduct, to obstruct the official proceeding included, among other things, the following:

A.  WELLS made materially false and misleading statements, as well as material omissions, that sought to conceal the true nature of her role and involvement at MEMG; the nature, form and amount of compensation that she received from MEMG; and the existence of a conspiracy and scheme to defraud, such as by denying knowledge of what happened to funds collected by MEMG.

56.     WELLS falsely told the Postal Inspectors that she only received payment a couple of times at the beginning of her employment with MEMG; never received a bonus; never had

29

access to MEMG bank accounts; was only paid a total of $30,000-$40,000 during her entire employment; was not aware of any investors who wanted their money back; and did not know where the approximately $1 million collected from investors went or how it was ultimately used.

57.     The statements and representations were false because as GRENETTA WELLS then and there knew:

A.  She had actually received payments from MEMG for over a year, from August 2008 through December 2009.

B.  Wells had access to MEMG bank accounts.

C.  Wells did receive a bonus.

D.  Wells received more than $150,000 directly or through Golden Strategies from MEMG.

E.  Investors had contacted GRENETTA and TERRY requesting return of their funds.

F.  Wells knew where investors' money went and how it was used, in part because she received loan proceeds that were used for day trading through Golden Strategies.

(All in violation of Title 18, United States Code, Sections 1512(c)(2).)

**FORFEITURE NOTICE**

THE GRAND JURY ALSO FINDS PROBABLE CAUSE THAT:

58.     Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, the defendants are hereby notified that, if convicted of any of the money laundering offenses alleged in Counts 11 through 14 above, those defendant(s) shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the money laundering offense of conviction, or any property traceable to such property, including, but not limited to, the following property:

A. A sum of money, which will be at least $1.2 million dollars in United States currency if the defendant is convicted of money laundering conspiracy (Count 11), which represents the amount of property involved in the money laundering offense.

59.     Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, the defendants are also notified that, if convicted of any of the conspiracy or wire fraud offenses alleged in Counts 1 through 10 above, those defendant(s) shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including, but not limited to, the following property:

A. A sum of money, in the amount of at least $1.2 million dollars in United States currency, which represents the amount of proceeds obtained as a result of the violations of 18 U.S.C. §§ 1343 and 1349.

60.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by 28 U.S.C. § 2461(c), the defendant shall forfeit substitute property, up to the value of the amount described in paragraphs 58 and 59 above, if, by any act or omission of the defendant, the property described in subparagraph b, or any portion thereof, cannot be located upon the exercise

31

of due diligence; has been transferred, sold to, or deposited with a third party; has been placed

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been

commingled with other property which cannot be divided without difficulty.

(Pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853(p), and Rule 32.2(a) of the Federal Rules of
Criminal Procedure.)

TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

Dana J. Boente
UNITED STATES ATTORNEY

By: _____
Katherine L. Wong
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams Office Building
2100 Jamieson Ave.
Alexandria, Virginia 22314-5794
Phone: 703-299-3700
Fax: 703-299-3981
Email: katherine.l.wong@usdoj.gov